**William E. CARVER, Harrison County Police Department, Harrison County Board of Commissioners, Fred Royse, Ed Sieg, and Terry Miller, Defendants–Appellants,**

v.

**Maynard CRAWFORD, Plaintiff–Appellee.**

No. 22A01–9005–CV–196.

Court of Appeals of Indiana, First District.

Dec. 20, 1990.

---

Sandra L. Heeke, Smith, Bartlett, Heeke & Carpenter, Jeffersonville, for defendants-appellants.

John M. Mayer, Jr., Hanger, Engerbretson, Mayer & Vogt, Clarksville, for plaintiff-appellee.

BAKER, Judge.

Defendant-appellants William Carver, Harrison County Police Department (jointly, "Carver"), Harrison County Board of Commissioners, and the individual commissioners (collectively, the "Commissioners") appeal the trial court's denial of their motion for summary judgment filed in connection with plaintiff-appellee Maynard Crawford's action for personal injury. We reverse.

## ISSUES

Carver presents the following restated issues for our review:

I. Whether the Indiana Tort Claims Act grants immunity to a police officer who is involved in an automobile accident while en route to the scene of a reported emergency.

II. Whether the Commissioners can be held liable for injuries resulting from an automobile accident involving a police officer.

## FACTS

The undisputed facts reveal that on September 8, 1987, Harrison County police officer Carver was called on his police radio to investigate a possible suicide. While driving to the scene, he turned on his flashing lights and siren. He subsequently turned the siren off in order to use his police radio, but continued using the flashing lights. Because the weather was rainy and the road conditions were slick, Carver slowed down to 25 or 30 miles per hour as he approached a hill. His automobile began to hydroplane when it reached the bottom of the hill. Carver crossed the center line of the road and collided with a truck in which Crawford was a passenger. Crawford suffered injuries as a result of the collision.

Carver's and the Commissioners' motion for summary judgment was denied by the trial court, and they bring this interlocutory appeal.

## DISCUSSION AND DECISION

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Sutton v. Sanders* (1990), Ind.App., 556 N.E.2d 1362. When reviewing the propriety of summary judgment, this court applies the same standards as the trial court and considers the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the light most favorable to the non-moving party. *Id.*

### I.

■ Carver argues summary judgment should have been granted in his favor because, as a governmental employee acting within the scope of his employment, he was immune from liability resulting from the enforcement of a law. Crawford contends governmental officials do not have complete immunity, and that a factual question exists as to whether Carver was immune from liability in this case.

IND.CODE 34–4–16.5–3 governs this dispute and states in part:

A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

.  .  .  .  .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment....

Thus, if Carver was acting within the scope of his employment and was enforcing a law when the loss resulted, he will not be liable for the loss.

Crawford does not question that Carver was enforcing a law at the time of the accident. He argues, however, that Carver's conduct may have been so outrageous that it was incompatible with the performance of the duty undertaken, and that Car-

ver may therefore not be immune from liability. To support this proposition, Crawford cites the opinion on rehearing in *Seymour Nat'l Bank v. State* (1981), Ind., 422 N.E.2d 1223, *reh'g granted*, 428 N.E.2d 203, *appeal dismissed, Seymour Nat'l Bank v. Indiana* (1982), 457 U.S. 1127, 102 S.Ct. 2951, 73 L.Ed.2d 1344. In *Seymour Nat'l Bank*, our supreme court stated the general rule regarding immunity for losses resulting from the enforcement of a law: the State of Indiana and its employees are not liable for losses resulting from the enforcement of or failure to enforce a law unless such enforcement constitutes a false arrest or false imprisonment. *Id.* The court then stated:

However, an employee's acts, although committed while engaged in the performance of his duty, might be so outrageous as to be incompatible with the performance of the duty undertaken. In such a case, it cannot be said that an injury resulting therefrom resulted from the performance of the duty. Such acts, whether intentional or willful and wanton, are simply beyond the scope of the employment.

*Id.* 428 N.E.2d at 204.

Since our supreme court's decision in *Seymour Nat'l Bank*, this court has been called upon several times to determine the meaning of the above quoted language concerning outrageous conduct. In response, this court has at times dismissed the outrageous conduct exception to governmental immunity as dicta and as nothing more than a theoretical possibility. *See Indiana Department of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338; *Riggin v. Board of Trustees of Ball State University* (1986), Ind.App., 489 N.E.2d 616, *trans. denied; Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253. *But see City of Wakarusa v. Holdeman* (1990), Ind.App., 560 N.E.2d 109.

We do not think the supreme court's language in *Seymour Nat'l Bank* changed or added to IND.CODE 34–4–16.5–3(7), the statute which grants immunity to law enforcement officials. The statute grants immunity to the governmental entity if the

individual is in the process of completing certain tasks which are within the scope of the employment. The Indiana Supreme Court in *Seymour Nat'l Bank* simply recognized that there are certain activities that, if engaged in by a governmental official, are beyond the scope of his employment. The court characterized these activities as being intentional or willful and wanton. *Seymour Nat'l Bank, supra,* 428 N.E.2d 203 at 204. The question of whether the governmental entity was acting within the scope of his employment at the time of the incident remains the central focus of the inquiry.

The case before us is similar to *Seymour Nat'l Bank, supra.* In *Seymour Nat'l Bank,* a state trooper attempted to stop a car because it was speeding and was equipped with an illegally high bumper. A high speed chase ensued in which the officer's speed approached 100 miles per hour at times. The officer was involved in an automobile accident during this chase, and the estates of the deceased parties brought suit against the State. *Seymour Nat'l Bank, supra,* 422 N.E.2d 1223. Our supreme court held that the officer was involved in the enforcement of a law, and was thus immune from liability. Summary judgment in favor of the State was appropriately granted by the trial court. *Id.* On rehearing, when the court discussed the possibility of outrageous conduct that is beyond the scope of employment and thus not immune, our supreme court said nothing about the existence of a factual question concerning outrageousness. *Seymour Nat'l Bank, supra,* 428 N.E.2d 203. Summary judgment was the appropriate vehicle to dispose of that case, as it is here. In this case, there was an accident on wet roads while the police officer was performing his job. He was travelling slowly and was using his flashing lights. There was nothing outrageous about his conduct that would make it incompatible with the performance of his duty. We find as a matter of law that Carver was acting within the scope of his employment. Because Carver was acting within the scope of his employment at the time of the accident, he was immune from liability, and the trial court

erred in denying his motion for summary judgment.

We note the fourth district of this court has decided this issue differently in the first case to find that a police officer may have engaged in ourtrageous conduct. Judge Chezem, writing for the majority, held there was a question of material fact whether a police officer's conduct was so outrageous as to be beyond the scope of employment when the officer was involved in an automobile accident as he looked at license plates of passing cars in his rearview mirror. *Holdeman, supra.* The trial court's denial of the State's motion for summary judgment was affirmed. *Id.* We disagree with the majority in *Holdeman,* and agree with Judge Hoffman, dissenting, who said "Officer Miller's conduct may have been negligent. Indiana has not adopted a due care or negligence exception to 'enforcement of a law' immunity." *Id.* at 111. Judge Hoffman would have reversed the trial court and entered summary judgment in favor of the State.

*Holdeman* does not dictate that we affirm the denial of summary judgment in this case. There is no factual question as to whether Carver was acting within the scope of his employment. "Immunity assumes negligence but denies liability." *Stagg, supra,* at 1343. The accident may have resulted from Carver's negligence; however, any negligence was nevertheless immune under the express terms of the statute. The purpose of immunity is to ensure that public employees are able to perform their duties without threat of civil litigation. *Id.; Indiana State Police v. Swaggerty* (1987), Ind.App., 507 N.E.2d 649, *trans. denied.* To allow plaintiffs to proceed to trial on the barest of allegations of outrageousness would be contrary to this policy. The trial court erred in denying Carver's motion for summary judgment.

II.

The Commissioners argue they have no control over the acts of the county sheriff and his officers, and they thus cannot be liable for Carver's actions. Crawford con-

tends the Commissioners control the functions of the police department, and are therefore liable for Carver's actions.

 There must be an agency relationship before imputed liability under the principle of *respondeat superior* is applicable. *Delk v. Board of Commissioners of Delaware County* (1987), Ind.App., 503 N.E.2d 436. The county commissioners do not have any control over the acts of the sheriff. *Id.* The sheriff is an office created by our constitution, and the powers and duties of the office are established by our legislature. *Id.* The county commissioners may have some limited emergency powers concerning the sheriff's office, but these powers do not relate to the ability to control the sheriff's actions. *Id.; see* IND.CODE 36–8–10–6(b). There is no agency relationship between the county commissioners and the sheriff, and the Commissioners are not liable for Carver's actions. The trial court erroneously denied the Commissioners' motion for summary judgment.

Judgment reversed and remanded, with instructions to enter summary judgment in favor of all of the defendants.

RATLIFF, C.J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur with the majority conclusion that Carver, in responding to a report of a possible suicide, was, as a matter of law, acting within the scope of his employment. I also agree that in doing so, he was enforcing a law.

The majority, however, rejects the holding of *City of Wakarusa v. Holdeman* (1990) 4th Dist., Ind.App., 560 N.E.2d 109, *trans. pending*, insofar as it honors a principle set forth in *Seymour National Bank v. State* (1981) Ind., 428 N.E.2d 203. *Seymour* stated that immunity does not exist for conduct "so outrageous as to be incompatible with the performance of the duty undertaken". 428 N.E.2d at 204. This principle has been questioned. *See Jacobs v. City of Columbus* (1983) 1st Dist. Ind. App., 454 N.E.2d 1253. It has not been overruled, however. Insofar as *Seymour*

continues to have viability in this regard, the nature of the conduct and its impact upon immunity constitute questions of fact for resolution by the jury.

In the case before us, however, no reasonable trier of fact could conclude that Carver's conduct was at all outrageous, much less so outrageous as to be incompatible with the carrying out of his police mission. For this reason I concur in Part I of the majority opinion.

I fully concur in Part II of the majority opinion.